## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| IAN PIERCE Derivatively on Behalf of A. O. SMITH CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| AJITA G. RAJENDRA, KEVIN J. WHEELER, JOHN J. KITA, RONALD D. BROWN, GLOSTER B. CURRENT, JR., WILLIAM P. GREUBEL, PAUL W. JONES, DR. ILHAM KADRI, BRUCE M. SMITH, MARK D. SMITH, IDELLE K. WOLF AND GENE C. WULF, | ) Case No. 19-cv-1199 ) ) **VERIFIED STOCKHOLDER** ) **DERIVATIVE COMPLAINT FOR** ) **VIOLATIONS OF SECURITIES LAWS,** ) **BREACH OF FIDUCIARY DUTY,** ) **WASTE OF CORPORATE ASSETS, AND** ) **UNJUST ENRICHMENT** |
| Defendants, | ) ) |
| -and- | ) **JURY TRIAL DEMANDED** ) |
| A. O. SMITH CORPORATION, a Delaware corporation, | ) ) ) |
| Nominal Defendant. | ) ) ) |

Plaintiff Ian Pierce ("Plaintiff"), by his attorneys, submits this Verified Stockholder Derivative Complaint for Violations of Securities Laws, Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff which are based on personal knowledge. This complaint is also based on the investigation of Plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder derivative action brought by Plaintiff on behalf of Nominal

Defendant A. O. Smith Corporation ("A. O. Smith" or the "Company") against the members of its board of directors (the "Board") and one member of upper management. The wrongdoing alleged herein has caused substantial damage to A. O. Smith 's reputation, goodwill, and standing in the business community, and has also exposed A. O. Smith to substantial, potential liability for violations of federal securities law.

2.     A. O. Smith is a producer of water heaters and boilers. It has two main operating groups: (1) North America; and (2) the rest of the world ("Rest of World"). The Rest of World group predominantly consists of the Company's business in China, which accounted for about one-third of A. O. Smith's total profits in 2018 and almost the entirety of its Rest of World segment sales.

3.     A. O. Smith has had a business presence in China for over 20 years. A. O. Smith's performance in China has become indicative of the Company's overall success. China is a huge market for water heaters and boiler products and for some time, A. O. Smith commanded a higher than average price in China due to offering a superior product in that market. In 2018, A. O. Smith announced "record" sales of $3.2 billion, which it said was "primarily" due to "higher sales of water treatment products in China," in addition to pricing actions in the United States. For the year, the Company's actual China sales were over $1 billion.

4.     From 2015 to 2018, A. O. Smith's reported net profits in China grew by over 36%. However, as would later be revealed, an undisclosed partner in China, Jiangsu UTP Supply Chain ("UTP") was the reason for these figures. According to later-revealed analyst allegations, A. O. Smith partnered with UTP to inflate its sales figures, force unwanted inventory through a controlled distribution channel ("channel stuffing"), and mask the declining business in China.

5.     Starting in 2015, China experienced a large downturn in its property market, which in turn affected demand for water heaters and boilers produced by A. O. Smith. Consequently, the profits that A. O. Smith earned in China began to decline as the Company struggled to maintain its ability to sell its products at premium prices, against lower-cost competitors.  Profits were further cut into because the Company attempted to move into so-called "second tier" Chinese cities where real estate values had fallen even further. To shield itself from adverse trends in an increasingly difficult market environment, A. O. Smith used its relationship with UTP to make it falsely appear as if its revenue in China was at very high levels.  In actuality, revenue levels only appeared robust due to improper distributor-financed channel stuffing. According to some estimations, UTP comprised approximately 75% of A. O. Smith's sales in China, during the relevant period.

## JURISDICTION AND VENUE

6.     Pursuant to 28 U.S.C. §1331 and Section 27 of the Securities and Exchange Act of 1934 ("Exchange Act"), this Court has jurisdiction over the claims asserted herein for violations of sections 14(a) of the Exchange Act and SEC Rule and 14a-9 promulgated thereunder. This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. §1367.

7.     This Court has jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and maintains operations in this District or is an individual with sufficient contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this Court in accordance with 28 U.S.C. §1391 because: (i) A. O. Smith maintains its principal place of business in this District; (ii) one or more of the Defendants either resides or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in

the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to A. O. Smith, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

9.    Plaintiff Ian Pierce is, and has continuously been, a stockholder of A. O. Smith during the time of the wrongdoing complained of herein.

**Nominal Defendant**

10.    Nominal Defendant A. O. Smith is a Milwaukee-based manufacturer of gas and electric water heaters, boilers, tanks and water treatment products. The Company is incorporated under the laws of the state of Delaware has two classes of common equity: Common Stock ("Common Stock") and Class A Common Stock ("Class A Stock"). Holders of Class A Stock are entitled to one (1) vote per share, and holders of Common Stock are entitled to one-tenth (1/10th) vote per share. The Company's common stock trades on the New York Stock Exchange ("NYSE") under ticker symbol "AOS."

11.    Certain members of the founding family of the Company and trusts for their benefit (the "Smith Family") have entered into a voting trust agreement with respect to shares of the Company's Class A Stock and Common Stock they own. According to the Company's 2019 Proxy Statement filed with the SEC on February 28, 2019, the Company may be deemed a controlled company by virtue of the Smith Family Voting Trust's stake (the "Voting Trust"). According to the 2019 Proxy, "The Smith Family Voting Trust has the power to elect a majority of our Class A Directors, who make up a majority of the Board. As of December 31, 2018, the Smith Family

Voting Trust directly or beneficially owned 96.5% of Class A Common Stock and therefore 96.5% of voting power with respect to the election of the Class A Directors."

12.     The Proxy further explicates that "since the Board is currently composed of six Class A Directors and four Common Stock Directors, the Smith Family Voting Trust effectively exercises control over voting power for a majority of the members of our Board of Directors, and therefore, we have qualified as a "controlled company" under the New York Stock Exchange ("NYSE") rules." Moreover:

> as a controlled company, under NYSE rules, we may choose to not have a majority of independent directors or compensation or governance committees consisting solely of independent directors. Notwithstanding our status as a controlled company, the Board has not elected to utilize the "controlled company" exemption in any respect because, as described below, we have a Board in which a majority of our members consist of independent directors, and all members of the Audit Committee, Personnel and Compensation Committee and Nominating and Governance Committee are independent for SEC and NYSE purposes.

13.     The Proxy states that Governance Committee and the Board considered that Bruce M. Smith and Mark D. Smith are trustees who together can "exercise control over the Smith Family Voting Trust and that they and their descendants are also beneficiaries of material economic interests associated with the Class A Common Stock subject to this trust." However, absent explanation, the Proxy states their economic interest does "not impair the independence of either Bruce or Mark Smith." Bruce M. Smith and Mark D. Smith are cousins.

14.     As of December 31, 2018, through the Voting Trust, the members of the Smith Family owned approximately 62.9 percent of the total voting power of the Company's outstanding shares of Class A Stock and Common Stock, taken together as a single class, and approximately 96.5 percent of the voting power of the outstanding shares of Class A Stock, as a separate class.

**Individual Defendants**

15. Defendant Ajita G. Rajendra ("Rajendra") was named Executive Chair of A. O. Smith in September 2018 and has served as a director since 2011. He previously served as chairman and chief executive officer from 2017 to August 2018, chairman, president and chief executive officer from 2014 to 2017, president and chief executive officer from 2013 to 2014, and president and chief operating officer from 2011 to 2012. He is also a member of the Investment Policy Committee of the Board. Rajendra joined the company as president of A. O. Smith Water Products Company in 2005 and was named executive vice president of the Company in 2006. According to the 2019 Proxy, he owns 321,351 shares of common stock, 70,265 shares of restricted stock units and 647,470 exercisable options. He was paid about $21.7 million for his services to the Company in 2016, 2017 and 2018. *Rajendra is a Class A Director and is elected by the Smith Family.* Rajendra sold approximately $5.5 million shares during the relevant period:

| Insider Name | Trade Date | Price Per Share | Number of Sold Shares | Value |
|---|---|---|---|---|
| Ajita G. Rajendra | 5/30/2018 | $64.62 | 7,400 | $478,188 |
| | 5/25/2018 | $64.60 | 2,600 | $167,960 |
| | 5/24/2018 | $64.06 | 10,000 | $640,600 |
| | 2/21/2018 | $66.55 | 5,000 | $332,750 |
| | 2/15/2018 | $64.84 | 8,200 | $531,688 |
| | 2/14/2018 | $64.02 | 6,800 | $435,336 |
| | 11/30/2017 | $62.74 | 3,610 | $226,491 |
| | 11/29/2017 | $62.65 | 1,390 | $87,090 |

| | 11/28/2017 | $61.81 | 15,000 | $927,122 |
| | 5/5/2017 | $55.25 | 30,000 | $1,657,500 |
| | | | **Total** | **$5,484,725** |

16.    By virtue of terms of the Voting Trust, the trustees have the power to elect Rajendra to the Board as a Class A Director and to ensure that he is also appointed Executive Chair.

17.    Defendant Kevin J. Wheeler ("Wheeler") has served as CEO and President of A. O. Smith since September 2018, its President since May 2017 and a director since July 2017. He previously served as the Company's Chief Operating Officer ("COO"), and before that was the Company's General Manager of North America, India and Europe Water Heating and Export business. According to the 2019 Proxy, he owns 28,705 shares of common stock 19,130 shares of restricted stock units, and 58,812 exercisable options.  He was paid about $6.8 million for his services to the Company in 2016, 2017 and 2018.  *Wheeler is a Class A Director and is elected by the Smith Family.* Wheeler sold about $1.5 million shares during the relevant period:

| Insider Name | Trade Date | Price Per Share | Number of Sold Shares | Value |
|---|---|---|---|---|
| Kevin J. Wheeler | 12/6/2017 | $61.49 | 13,293 | $817,387 |
| | 5/4/2017 | $54.39 | 13,600 | $739,704 |
| | | | **Total** | **$1,557,091** |

18.    By virtue of terms of the Voting Trust, the trustees have the power ensure Wheeler is appointed CFO and A Class A Director.

19.    Accordingly, the trustee (the Smith Family) had the ability to ensure that the Board in controlled through Class A Directors and that the top executives are beholden to them.

20.     Defendant John J. Kita ("Kita") served as Chief Financial Officer ("CFO") of A. O. Smith throughout the relevant period until his retirement in May 2019. According to the 2019 Proxy, he owns 41,917 shares of common stock 18,565 shares of restricted stock units, and 58,282 exercisable options.  He was paid about $9 million for his services to the Company in 2016, 2017 and 2018. Kita sold about $6.1 million shares during the relevant period:

| Insider Name | Trade Date | Price Per Share | Number of Sold Shares | Value |
|---|---|---|---|---|
| John J. Kita | 6/8/2018 | $64.61 | 9,000 | $581,459 |
| | 2/16/2018 | $66.10 | 25,000 | $1,652,500 |
| | 11/22/2017 | $60.78 | 8,958 | $544,465 |
| | 6/2/2017 | $56.32 | 12,200 | $687,149 |
| | 5/1/2017 | $53.86 | 31,619 | $1,702,999 |
| | 12/5/2016 | $49.74 | 20,000 | $994,800 |
| | | | Total | **$6,163,372** |

21.     Defendant Ronald D. Brown ("Brown") has been a director of the Company since 2001 and authorized the Company's Definitive Proxy Statement for 2017 (the "2017 Proxy"), 2018 (the "2018 Proxy") and 2019 (the "2019 Proxy") annual meetings of the stockholders. According to the 2019 Proxy, he owns 43,896 shares of common stock 52,311 shares of restricted stock units. He received $225,556 in compensation for 2018, which consisted of $100,500 in fees earned or paid in cash and $125,056 in stock awards. He received $227,523 in compensation for 2017, which consisted of $102,500 in fees earned or paid in cash and $125,023 in stock awards. He received $244,213 in compensation for 2016 which consisted of $119,125 in fees paid or earned in cash and $125,088 in stock awards. *Brown is a Class A Director and is elected by the Smith Family.*

Brown approximately $853,600 shares during the relevant period:

| Insider Name | Trade Date | Price Per Share | Number of Sold Shares | Value |
|---|---|---|---|---|
| Ronald D. Brown | 5/2/2019 | $52.45 | 8,000 | $419,600 |
| | 5/24/2017 | $54.25 | 8,000 | $434,000 |
| | | | **Total** | **$853,600** |

22.     Defendant Gloster B. Current, Jr. ("Current") was a director of the Company from at least January 2016 to April 2018 and authorized the 2017 and 2018 Proxies. According to the 2019 Proxy, Current received $22,125 in compensation for 2018 and deferred receipt of 71,352 shares until his separation from service as a director which occurred effective April 9, 2018.

23.     Defendant William P. Greubel ("Greubel") has been a director of the Company since 2006 and authorized the 2017, 2018 and 2019 Proxies. According to the 2019 Proxy, he owns 16,873 shares of restricted stock units.   He received $225,556 for 2018 which consisted of $100,500 in fees earned or paid in cash and $125,056 in stock awards. He received $222,523 for 2017 which consisted of $97,500 in fees earned or paid in cash and $125,023 in stock awards. He received $235,213 in compensation for 2016 which consisted of $110,125 in fees paid or earned in cash and $125,088 in stock awards. Greubel sold approximately $2 million shares during the relevant period:

| Insider Name | Trade Date | Price Per Share | Number of Sold Shares | Value |
|---|---|---|---|---|
| William P. Greubel | 2/1/2018 | $66.50 | 17,856 | $1,187,424 |
| | 2/9/2017 | $49.00 | 17,621 | $863,429 |
| | | | Total | **$2,050,853** |

24.     Defendant Paul W. Jones ("Jones") has been a director of the Company since 2004

and authorized the 2017, 2018 and 2019 Proxies. *Jones is a Class A Director and is elected by the Smith Family.* According to the 2019 Proxy, he owns 200,967 shares of common stock. He received $216,056 in compensation for 2018 which consisted of $91,000 in fees earned or paid in cash and $125,056 in stock awards. He received $211,523 in compensation for 2017, which consisted of $86,500 in fees earned or paid in cash and $125,023 in stock awards. He received $194,713 in compensation for 2016 which consisted of $69,625 in fees paid or earned in cash an $125,088 in stock awards. Jones sold about $14.3 million shares during the relevant period:

| Insider Name | Trade Date | Price Per Share | Number of Sold Shares | Value |
|---|---|---|---|---|
| Paul W. Jones | 5/9/2019 | $49.50 | 1,000 | $49,500 |
| | 2/8/2019 | $49.00 | 20,000 | $980,000 |
| | 11/13/2018 | $45.99 | 9,000 | $413,910 |
| | 8/21/2018 | $58.92 | 4,591 | $270,502 |
| | 8/3/2017 | $54.02 | 60,000 | $3,241,200 |
| | 2/15/2017 | $49.23 | 24,645 | $1,213,273 |
| | 2/10/2017 | $49.81 | 120,900 | $6,022,029 |
| | 2/6/2017 | $49.47 | 44,490 | $2,200,920 |
| | | | **Total** | **$14,391,334** |

25.     Defendant Ilham Kadri ("Kadri") has been a director of the Company since December 12, 2016 and authorized the 2017, 2018 and 2019 Proxies. According to the 2019 Proxy, Kadri owns 5,270 shares of common stock. She received $216,056 in compensation for 2018 which consisted of $91,000 in fees earned or paid in cash and $125,056 in stock awards. She received $211,940 in compensation for 2017 which consisted of $86,917 in fees paid or earned in

cash and $125,023 in stock awards. She received $46,715 in compensation for 2016 which consisted of $6,667 in fees paid or earned in cash and $40,048 in stock awards.

26. Defendant Bruce M. Smith ("B. Smith") has been director of the Company since at least 1995 and authorized the 2017, 2018 and 2019 Proxies. B. Smith is one of three trustees of the Voting Trust, which holds a controlling position in the stock of the Company. *B. Smith is a Class A Director.* According to the 2019 Proxy, he directly owns 471,060 shares of common stock (including those held beneficially as settlor of a revocable family trust). He received $216,056 in compensation for 2018 which consisted of $91,000 in fees earned or paid in cash and $125,056 in stock awards. He received $251,273 in compensation for 2017 which consisted of $126,250 of fees paid or earned in cash and $125,023 in stock awards. He received $244,713 in compensation for 2016 which consisted of $119,625 in fees paid or earned in cash and $125,088 in stock awards. B. Smith sold about $268,100 in shares during the relevant period.

27. Defendant Mark D. Smith ("M. Smith") is a director of the Company since 2001 and authorized the 2017, 2018 and 2019 Proxies. *M. Smith is a Class A Director.* According to the 2019 Proxy, he directly owns 433,038 shares of common stock (including those held beneficially as settlor of a revocable family trust). He received $216,056 in compensation for 2018 which consisted of $91,000 in fees earned or paid in cash $125,056 in stock awards. He received $213,023 in compensation for 2017 which consisted of $88,000 in fees paid or earned in cash and $125,023 in stock awards. He received $212,213 in compensation for 2016 which consisted of $87,125 in fees paid or earned in cash and $125,088 in stock awards. M. Smith is one of three trustees of the Voting Trust, which holds a controlling position in the stock of the Company. B. Smith is a first cousin of M. Smith. M. Smith sold about $853,600 in shares during the relevant period.

28.    Defendant Idelle K. Wolf ("Wolf") has been a director of the Company since 2005 and authorized the 2017, 2018 and 2019 Proxies. According to the 2019 Proxy, she owns 52,023 shares of common stock 9,122 shares of restricted stock units.  She received $216,056 in compensation for 2018 which consisted of $91,500 in fees earned or paid in cash $125,056 in stock awards. She received $213,023 in compensation for 2017 which consisted of $88,000 in fees paid or earned in cash and $125,023 in stock awards. She received $212,213 in compensation for 2016 which consisted of $87,125 in fees paid or earned in cash and $125,088 in stock awards. Wolf sold about $228,233 in shares during the relevant period.

29.    Defendant Gene C. Wulf ("Wulf") has been a director of the Company since 2003 and authorized the 2017, 2018 and 2019 Proxies. According to the 2019 Proxy, he owns 110,131 shares of common stock.  He received $247,306 in compensation for 2018 which consisted of $122,250 in fees earned or paid in cash $125,056 in stock awards. He received $223,023 in compensation for 2017 which consisted of $98,000 in fees paid for earned in cash and $125,023 in stock awards. He received $222,213 in compensation for 2016 which consisted of $97,125 in fees paid or earned in cash and $125,088 in stock awards.

30.    Defendants Rajendra, Wheeler, Kita, Brown, Current, Greubel. Jones, Kadri, B. Smith, M. Smith, Wolf, and Wulf are herein collectively referred to as the "Individual Defendants."

31.    Moreover, despite the economic realities associated with power afforded the Trust over governance elections, "the Board has determined that Messrs. Brown, Jones, Greubel, Bruce M. Smith, Mark D. Smith and Wulf, Dr. Kadri and Ms. Wolf meet the NYSE independence requirements."  Again, this statement is not accompanied by any form of explanation supporting the conclusion. During the relevant period, the Individual Defendants were managers overseeing

A. O. Smith's operations and finances and made or authorized the materially false and misleading statements described herein. The Individual Defendants had intimate knowledge about core aspects of A. O. Smith's financial and business operations, including its business in China. The Individual Defendants have traveled to China on business for A. O. Smith and are focused on, and personally involved in, the Company's operations in China given the country's significance to A. O. Smith's overall business and prospects. The Individual Defendants also made decisions regarding disclosures that would be made by A. O. Smith.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

32.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and continues to owe A. O. Smith and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care, and was/is required to use his utmost ability to control and manage A. O. Smith  in a fair, just, honest, and equitable manner. The Individual Defendants were/are required to act in furtherance of the best interests of A. O. Smith and its stockholders, to benefit all stockholders equally, and not in furtherance of their personal interest or benefit.

33.     Each Individual Defendant owed and continues to owe A. O. Smith, and its stockholders, the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.

34.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of A. O. Smith, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their executive and/or directorial positions with A. O. Smith, each of the Director Defendants had knowledge of material, nonpublic

information regarding the Company. In addition, as officers and/or directors of a publicly held company, the Director Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's business practices, operations, financials, financial prospects, compliance policies, and internal controls, so that the market price of the Company's stock would be based on truthful and accurate information.

35.     To discharge their duties, the Individual Defendants were/are required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. The Individual Defendants were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements—including requirements involving the filing of accurate financial and operational information with the SEC—and refrain from engaging in insider trading and other deceptive conduct;

(b)     conduct the affairs of the Company in compliance with all applicable laws, rules, and regulations to make it possible to provide the highest quality performance of its business, avoid wasting the Company's assets, and maximize the value of the Company's stock;

(c)     remain informed as to how A. O. Smith conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make a reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws; and

(d)     truthfully and accurately guide investors and analysts as to the business operations of the Company at any given time.

## DUTIES PURSUANT TO THE COMPANY'S CODE OF CONDUCT

36.     The Individual Defendants, as officers and/or directors of A. O. Smith, were also bound by the Company's Code of Conduct[1] (the "Code of Conduct"), and the Corporate Governance Guidelines[2] which set out guiding principles concerning employee and business

---

[1] See A.O. Smith Corporation Code of Conduct:
https://www.aosmith.com/uploadedFiles/Web_Assets/Documents/Governance/GuidingPrinciples.pdf
[2] See A.O. Smith Corporation Corporate Governance Guidelines:
https://www.aosmith.com/uploadedFiles/Web_Assets/Documents/Governance/Corporate%20Governance%20Guide

conduct. In particular, the Code of Conduct mandates that employees must "never take any action that violates the law and never encourage anyone else to violate the law on behalf of A. O. Smith…(employees) are responsible for reporting any violation (of the Code of Conduct) or any illegal or unethical act."

37.     The Code of Conduct also provides "As a publicly traded company in the United States, A. O. Smith is obligated to report any material information to the investing public as quickly as practical. Material information is anything that a reasonable investor would consider important when deciding whether to buy, sell, or hold our stock. Examples would be major new contracts from customers, an important new product introduction, an acquisition, a major lawsuit, and future sales and profit estimates."

38.     Further, the Code of Conduct requires, in part, the following:

Records and reports should be accurate, timely, complete, and consistent with generally accepted accounting principles in the U. S. You are responsible for any reports you write and records you keep. This includes sales records, production records, expense reports, inventory or scrap reports, environmental records, accounting records, and any other business-related reports, transcripts, or records. If you become aware of any inaccurate, false, or misleading entry in the company's books or records, report it immediately to your supervisor, the company's chief financial officer, the Legal Department or to the Integrity Help Line. Any such calls to the Integrity Help Line will be reported directly to the Audit Committee of the Board of Directors.

39.     In addition to these duties, Board members who served on the Audit Committee owed specific duties to A. O. Smith under the Audit Committee Charter (the "Audit Charter").[3] Specifically, they are mandated to:

Assist the Board of Directors in fulfilling the Board's oversight responsibilities relating to (i) the integrity of the Company's financial statements and the financial reporting process, (ii) the Company's process for financial reporting and compliance with legal and regulatory requirements, (iii) the independent registered

lines.pdf
[3] *See* Audit Committee Charter at:
https://www.aosmith.com/uploadedFiles/Web_Assets/Documents/Governance/Charter%20Audit%20Committee.pdf

public accounting firm's (hereinafter "independent auditors") selection, qualifications and independence, (iv) the performance of the Company's internal audit function and independent auditors, (v) the assessment of the effectiveness of the Company's internal controls and (vi) the Company's enterprise risk management policies and procedures.

40.     The Audit Charter further requires the Audit Committee to oversee internal controls

and risk management, including:

> Review and discuss the annual audited financial statements and quarterly financial statements with management and the independent auditors, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations", and make a recommendation to the Board of Directors as to the inclusion of the annual audited financial statements in the Annual Report on Form 10-K and the quarterly unaudited financial statements and Forms 10-Q; Review and discuss with management of the Company and the independent auditors the quarterly earnings press release and hold general discussion on financial information and earnings guidance provided to analysts and rating agencies as well as any matters required to be communicated to the Committee by the independent auditors; Meet periodically with management to review and discuss the Company's policies and procedures regarding risk assessment and risk management. While it is the responsibility of management to assess and manage the Company's exposure to risk, the Committee, in conjunction with the other committees of the Board, will discuss and review the policies and procedures that govern the process and the steps management has taken to assess, monitor and control such exposures; Meet periodically to review and discuss with management and the independent auditors the Company's accounting policies, that may be viewed as critical, and review and discuss any significant changes. The Committee will also review and discuss with management and the independent auditors significant accounting and reporting developments, including recent professional and regulatory pronouncements, and their impact on the Company's financial statements; Discuss with management the results of Disclosure Committee meetings and management's activities in connection with performing its required quarterly certifications under Section 302 of the Sarbanes-Oxley Act, including the evaluation of the effectiveness of disclosure controls by the Chief Executive Officer and Chief Financial Officer; Establish and annually review procedures for (i) the receipt, retention and treatment of complaints received by the Company regarding accounting, internal controls or auditing matters, and (ii) the confidential, anonymous submission by employees of information regarding questionable accounting or auditing matters all in accordance with the requirements of Section 301 of the Sarbanes-Oxley Act as amended and related statutory and/or regulatory requirements; Report regularly to the Board, including as to any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory

requirements, the Company's enterprise risk management policies and procedures, the performance and independence of the independent auditors or the performance of the internal audit function.

**Breaches of Duties**

41.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and/or directors of A. O. Smith, the absence of good faith on their part, and a reckless disregard for their duties to the Company.

42.     The Individual Defendants breached their duty of loyalty and good faith by utterly failing to implement a reasonable, relevant, meaningful, and well-constituted system of internal controls, especially with respect to revenue recognition practices. The Director Defendants also breached their duty of loyalty and good faith by allowing Defendants to cause, or by themselves causing, the Company to make improper statements to the public and the Company's stockholders. These unlawful practices wasted the Company's assets and caused A. O. Smith to incur substantial damage.

43.     The Audit Committee members had a duty to review the Company's earnings press releases and regulatory filings. The members of the Audit Committee breached their duty of loyalty and good faith by approving the improper statements detailed herein and failing to properly oversee A. O. Smith 's public statements and internal control function.

44.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of A. O. Smith, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein. The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions. In addition, as a result of Individual Defendants' improper course of conduct, the Company is now the subject of the securities class action that alleges violations of federal securities laws. As a result, A. O. Smith has expended, and will continue to expend, significant sums of money.

## THE INDIVIDUAL DEFENDANTS CAUSED HARM TO THE COMPANY

45.     On July 26, 2016 A. O. Smith published a press release announcing "record second quarter" net earnings of $87.1 million. The press release said these large profits were driven in large part by the success of A. O. Smith's China operations:

> *"Our strong year-over-year earnings growth of 23 percent continued to demonstrate solid execution by our business teams in North America and China,"* noted Ajita G. Rajendra, chairman and chief executive officer.

> *"We achieved year-over-year sales growth, in China of 16 percent in local currency in the second* quarter thanks to increased sales of water heating and water treatment products," Rajendra added.

*     *     *

**Rest of World segment**

> Sales of this segment, which is primarily comprised of China, Europe and India, increased approximately eight percent in the second quarter of 2016 to $239.8 million from $221.3 million in the year-ago quarter. *Continued strong* **customer demand/or the company's premium water heating and water treatment products drove China sales nearly 16 percent higher in local currency and approximately 10 percent higher as measured in U.S. dollars.**

> Operating earnings for this segment were $33.0 million compared with $30.9 million earned in the 2015 second quarter.  The impact to profits from higher China sales was partially offset by higher selling costs to support expansion in tier 2 and tier 3 cities and the e-commerce platform in China, as well as larger losses in India. Segment operating earnings were negatively impacted by approximately $2 million due to China currency translation. As a result of these factors, second quarter 2016 operating margin of 13.8 percent was modestly lower than the 14.0 percent operating margin in 2015.

> Emphasis Added.

46.     On August 8, 2016, A. O. Smith lodged a Form 10-Q, signed by Defendant Rajendra and Defendant Kita, which emphasized the Company's 2Ql6 earnings and operating

results, including for its China group. Attached to the report were SOX certifications signed by defendants Rajendra and Kita, attesting to the accuracy of the report. The Form 10-Q also stated that A. O. Smith's China sales were expected to grow throughout 2016, stating in pertinent part:

> Sales in our Rest of World segment grew approximately eight percent in the second quarter of 2016, as a result of ten percent sales growth in China. Sales in our Rest of World segment grew approximately ten percent in first half of 2016. China sales in local currency grew approximately 16 percent in both the second quarter and first half of 2016 compared to the same periods last year. We expect full year 2016 sales in China to grow at a rate of approximately 15 percent in local currency driven by expected continued overall water heater market growth, market share gains, improved product mix and water treatment product growth at a rate significantly higher than 15 percent.

47.    On October 26, 2016, A.0. Smith issued a press release announcing "record sales and strong earnings increases" for 3Q16 of $683.9 million and $83.2 million, respectively. The press release said the increases were largely due to success in the Company's China operations stating that:

> continued strong demand for the company's water heating and water treatment products in China drove sales in the third quarter nine percent higher compared with sales of $625.1 million during the same period in 2015" and that "[s]ales increased 11 percent when adjusted for the impact from the stronger U.S. dollar against the Chinese and Canadian currencies…A. O. Smith delivered record sales and strong earnings increases thanks to our global growth strategy," commented Ajita Rajendra, chairman and chief executive officer.

**Rest of World segment**

> Sales of this segment increased 11 percent in 2016 to $965.6 million compared with 2015 sales of $866.1 million. ***China sales increased 13 percent and grew 19 percent when the impact from the stronger U.S. dollar is excluded. An increase in demand for water heaters and residential air purification products and 35 percent growth in A. O. Smith-branded water treatment product sales contributed to the strong growth in China.***
>
> ***Operating earnings for this segment increased 14 percent in 2016 to $129.1 million compared with $113.0 million earned the prior year.*** Higher sales were partially offset by increased China selling, general and administrative

(SG&A) expenses. Higher selling costs in China to support expansion in tier 2 and 3 cities, as well as higher advertising costs to support brand building, were the primary drivers of higher segment SG&A expenses. Currency translation reduced China earnings by approximately $8 million. Segment operating margin was slightly higher at 13.4 percent in 2016 compared with 2015 segment operating margin of 13.0 percent.

*Segment sales for the fourth quarter 2016 of $268.1 million were 16 percent higher than the same period in the previous year. Sales in China increased 24 percent in the quarter, excluding the impact from the strengthening U.S. dollar. Continued demand for the company's consumer products in the region led by water treatment and air purification products contributed to the strong sales growth.*

*Segment operating earnings of $38.2 million were 34 percent higher in the fourth quarter of 2016 than in the same three-month period in 2015, driven by the impact from higher China sales.* Higher selling costs to support growth, higher advertising costs to support brand building and $2.5 million due to currency translation, all in China, partially offset higher China sales. Segment operating margin for the period at 14.2 percent was higher than the fourth quarter of 2015 at 12.3 percent due to higher gross margins primarily driven by a more profitable mix of China products and improved profitability associated with sales of water treatment products in the 2016 quarter.

48.     On November 8, 2016, A. O. Smith filed a Form 10-Q, signed by defendant Rajendra and defendant Kita**,** which reiterated the Company's 3Q16 earnings and operating results, including for its China segment. Attached to the report were SOX certifications signed by defendants Rajendra and Kita, attesting to the accuracy of the report. The Form 10-Q reiterated that A. O. Smith was experiencing strong sales in China, stating in pertinent part:

Sales in our Rest of World segment grew approximately 11 percent in the third quarter of 2016, as a result of 11 percent sales growth in China *China sales* in local currency grew approximately 17 percent in the third quarter compared to the same period last year. We expect full year 2016 sales in China to grow at a rate in excess of 16 percent in local currency driven by expected continued overall water heater market growth, market share gains, improved product mix and growth in sales of water treatment products at a rate significantly higher than 16 percent.

49.     On February 2, 2017, A. O. Smith issued a press release announcing "record sales of $2.69 billion and record net earnings of $326.5 million, or $1.85 per share, for 2016 compared

with net earnings of $282.9 million, or $1.58 per share, the previous year." Again, the Company touted its success in China as the primary driver of the results, stating that "[s]ales in China grew 13 percent during 2016 and grew 19 percent when the impact from the stronger U.S. dollar is excluded." The press release continued in pertinent part:

> *"A. 0. Smith had another excellent year, setting sales and earnings records thanks to continued healthy end markets for our consumer products in China and for boilers and commercial water heaters in the U.S.,"* Ajita G. Rajendra, chairman and chief executive officer, observed.
>
> "In addition to the launch of several new products in China, *we saw an increase in China water treatment sales of nearly 35 percent,"* Rajendra continued.

**Rest of World segment**

*    *    *

> Sales of this segment increased 11 percent in 2016 to $965.6 million compared with 2015 sales of $866.1 million. ***China sales increased 13 percent and grew 19 percent when the impact from the stronger U.S. dollar is excluded. An increase in demand/or water heaters and residential air purification products and 35 percent growth in A. O. Smith-branded water treatment product sales contributed to the strong growth in China.***
>
> ***Operating earnings for this segment increased 14 percent in 2016 to $129.1 million compared with $113.0 million earned the prior year.*** Higher sales were partially offset by increased China selling, general and administrative (SG&A) expenses. Higher selling costs in China to support expansion in tier 2 and 3 cities, as well as higher advertising costs to support brand building, were the primary drivers of higher segment SG&A expenses. Currency translation reduced China earnings by approximately $8 million. Segment operating margin was slightly higher at 13.4 percent in 2016 compared with 2015 segment operating margin of 13.0 percent.
>
> ***Segment sales for the fourth quarter 2016 of $268.1 million were 16 percent higher than the same period in the previous year. Sales in China increased 24 percent in the quarter, excluding the impact from the strengthening U.S. dollar. Continued demand for the company's consumer products in the region led by water treatment and air purification products contributed to the strong sales growth.***
>
> ***Segment operating earnings of $38.2 million were 34 percent higher in the fourth quarter of 2016 than in the same three-month period in 2015, driven***

*by the impact from higher China sales.* Higher selling costs to support growth, higher advertising costs to support brand building and $2.5 million due to currency translation, all in China, partially offset higher China sales. Segment operating margin for the period at 14.2 percent was higher than the fourth quarter of 2015 at 12.3 percent due to higher gross margins primarily driven by a more profitable mix of China products and improved profitability associated with sales of water treatment products in the 2016 quarter.

50.    On February 17, 2017, A. O. Smith lodged a Form 10-K, signed by defendant Rajendra and defendant Kita, which reiterated the Company's 4Q16 and FY16 earnings and operating results, including for its China group. Attached to the report were SOX certifications signed by defendants Rajendra and Kita, attesting to the accuracy of the report. The Form 10-K highlighted A. O. Smith's experience and market dominance in China, claiming the Company had grown to become "one of the leading suppliers of water heaters to the residential market in China." It continued in pertinent part:

### REST OF WORLD

Sales in our Rest of World segment increased 11.5 percent, or $99.5 million, in 2016 compared with the prior year. *A 12.5 percent increase in sales in China to $887.9 million was the primary source of the increase. Excluding the appreciation of the U.S. dollar in 2016, sales in China increased 18.9 percent in 2016.*

*We have operated in China for more than 20 years. In that time, we have been aggressively expanding our presence while building A. O. Smith brand recognition in the residential and commercial markets.* The Chinese water heater market is predominantly comprised of electric wall-hung, gas tankless and solar water heaters. *We believe we are one of the leading suppliers of water heaters to the residential market in China,* with a broad product offering including electric, gas, gas tankless, heat pump and solar units as well as combi boilers. Primarily for Asia, we also manufacture and market water treatment products and air purification products.

We sell water heaters in more than 9,000 retail outlets in China, of which over 2,500 exclusively sell our products. Our water treatment products and air purification products are sold in over 6,500 and 2,500 retail outlets in China, respectively. Our e-commerce sales continue to grow in China reaching nearly
$200 million in 2016.

- 22 -

51.     The Form 10-K also said the main driver of A. O. Smith's favorable 2016 financial and operating results was the Company's success in China:

**RESULTS OF OPERATIONS**

Our sales in 2016 were a record $2,685.9 million surpassing 2015 sales    of $2,536.5 million by 5.9 percent.  Excluding the impact from the appreciation of the U.S. dollar against the Chinese currency that occurred in 2016, our sales grew approximately eight percent in 2016. *The increase in sales in 2016 was primarily* **due to higher sales in China of water heaters, residential air purification** *products,* as well as 35 percent sales growth of A. 0. Smith-branded water treatment products. **Sales in China grew 12.5 percent in 2016, and excluding the impact of the appreciation of the U.S. dollar, sales in China increased 18.9 percent in 2016.**

52.     The 2016 Form 10-K also stated that the Company was positioned to continue to grow its China business throughout 2017:

**Outlook**

**We expect our sales in China will continue to grow at a rate of approximately 15 percent in local currency terms in 2017 led by continued strong sales growth, of water heaters, water treatment and air purification products.**  We project continued declines in the Chinese currency compared to the U.S. dollar resulting in a five percent, or $40 million, headwind in 2017 sales, compared with the average rate in 2016….

Combining all these factors, we expect sales growth of between eight and 9.5 percent in 2017 and sales growth of between 9.5 and 11 percent measured in local currency in 2017 and earnings to be in the range of $1.98 to $2.08 per share for 2017. This does not include the potential impact of future acquisitions.

53.     On April 27, 2017, A. O. Smith published a press release again announcing "record" first quarter results on the back of purportedly strong China sales. The press release said the Company had achieved "first quarter net earnings of $87.7 million or $.50 per share on record first quarter sales of $740.0 million." It continued in pertinent part:

Sales in the quarter ended March 31 grew approximately 16 percent compared with sales of $636.9 million during the same period in 2016. **Sales in China grew** *20 percent during the first quarter 2017 or grew 27 percent when*

- 23 -

*excluding the impact from the stronger U.S. dollar.*

"The strength of both the U.S. water heater industry and *our consumer product demand in China is encouraging,*" noted Chairman and Chief Executive Officer Ajita G. Rajendra. *"With double digit sales growth in both, operating segments in the quarter, A. 0. Smith is starting the year on solid footing."*

\*      \*      \*

**Rest of World Segment**

Sales of this segment, which is primarily comprised of China, Europe and India, increased approximately 19 percent in the first quarter of 2017 to $259.5 million from $217.4 million in the year ago quarter. *Continued strong customer demand/or the company's premium products and a pre-buy in advance of a price increase related to steel and other cost inflation, drove China sales 27 percent higher as measured in local currency and over 20 percent higher as measured in U.S. dollars. Water treatment sales in China grew over 50 percent and air purification sales grew over 80 percent in local currency.*

54.     On May 8, 2017, A. O. Smith lodged a Form 10-Q, signed by defendant Rajendra and defendant Kita, which reiterated the Company's 1 Ql7 earnings and operating results, including for its China group. Attached to the report were SOX certifications signed by defendants Rajendra and Kita, attesting to the accuracy of the report. The Form 10-Q highlighted A. O. Smith's product sales in China:

Sales in our Rest of World segment grew approximately 19 percent in the first quarter of 2017 *as a result of 20 percent sales growth in China. China sales in local currency terms grew approximately 27 percent in the first quarter compared to the same period last year driven by higher demand/or our consumer products and by a pre-buy by our customers in advance of a price increase related to steel and other costs.*

*We expect full year 2017 sales in China to grow at a rate of over 15 percent in local currency terms driven by expected continued overall water heater market growth, market share gains, improved product mix and water treatment product sales growth at a rate significantly higher than 15 percent.*

55.     On July 26, 2017, A. O. Smith issued a press release again announcing, "record second quarter net earnings" of $92.4 million "on nearly 11 percent increase in sales." Once again

the favorable results were attributable to the surge in Chinese demand for its products that the Company was purportedly experiencing. The press release continued in pertinent part:

> ***"We continued to see solid demand/or our premium products in China with sales growth, in local currency of 20 percent, led by water treatment and air purification,"*** commented Ajita G. Rajendra, chairman and chief executive officer. "Sales of our commercial water heaters and boilers in North America continued to be strong."

*     *     *

> **Rest of World segment**
>
> Sales of this segment, which is primarily comprised of China, Europe and India, increased approximately 14 percent in the second quarter of 2017 to $272.8 million from $239.8 million in the year-ago quarter. ***Continued strong customer demand for the company's premium products, as well as a price increase announced in the first quarter of 2017, drove China sales 20 percent higher in local currency. A. 0. Smith, branded water treatment sales grew 40 percent in local currency in the second quarter of 2017, and air purification product sales quadrupled.***

56.     On August 8, 2017, A. O. Smith filed a Form 10-Q, signed by defendant Rajendra and defendant Kita, which reiterated the Company's 2Q17 earnings and operating results, including for its China segment. Attached to the report were SOX certifications signed by defendants Rajendra and Kita, attesting to the accuracy of the report. The Form 10-Q highlighted A. O. Smith's product sales in China, stating in pertinent part:

> Sales in our Rest of World segment grew approximately 14 percent in the second quarter of 2017 compared to the same period last year as a result of 15 percent sales growth in China. ***China sales in local currency terms grew approximately 20 percent in the second quarter driven by higher demand for our consumer products, led by water treatment and air purification, and pricing actions due to higher steel and other costs.***
>
> ***We expect full year 2017 sales in China to grow compared to 2016 at a rate of almost 17 percent in local currency terms driven by expected continued overall water heater market growth, market share gains, higher average selling prices and water treatment product sales growth at a rate significantly higher than 15 percent.***

57. On October 25, 2017, A. O. Smith issued a press release again announcing "record third quarter net earnings" of $93.7 million "on 10 percent increase in sales." Once again, the press release stated that China was a driver of the growth, with defendant Rajendra quoted as saying: "Sales of our consumer products in China, particularly water treatment and air purification, contributed to our growth, as well." The press release continued in pertinent part:

**Rest of World segment**

Sales of this segment, which is primarily comprised of China, Europe and India, increased approximately 12 percent in the third quarter of 2017 to $270.1 million compared with the year-ago quarter. *Higher demand for the company's premium consumer products, as well as pricing actions due to higher steel and other costs, drove China sales up nearly 13 percent.*

58. On November 6, 2017, A. O. Smith filed a Form 10-Q, signed by defendant Rajendra and defendant Kita, which reiterated the Company's 3Ql 7 earnings and operating results, including for its China segment. Attached to the report were SOX certifications signed by defendants Rajendra and Kita, attesting to the accuracy of the report. The Form 10-Q stated that the Company's China sales were expected to continue to grow, stating:

In our Rest of World segment, we expect full year 2017 sales in China to grow compared to 2016 at a rate of over 15 percent in local currency terms driven by expected continued overall water heater market growth, market share gains, improved product mix and water treatment product sales growth at a rate significantly higher than 15 percent.

*Rest of World*

Sales in our Rest of World segment were $270.1 million in the third quarter of 2017 or $29.8 million higher than sales of $240.3 million in the third quarter of 2016. Sales in the first nine months of 2017 were $802.4 million or $104.8 million higher than sales of $697.6 million in the first nine months of 2016. *China sales grew approximately 13 percent and 20 percent in local currency terms in the third quarter and first nine months of 2017, respectively, compared to same periods in the prior year, primarily due to higher sales of consumer products, particularly water treatment and air purification products.* Sales in China in both periods of 2017 also benefitted from pricing actions announced earlier this year due to higher steel and other

costs. ***China sales of A. O. Smith branded water treatment products grew 31 percent and China sales of air purification products doubled in the first nine months of 2017, compared to the same period last year.***

Rest of World segment earnings were $33.8 million in the third quarter of 2017 or approximately nine percent higher than segment earnings of $31.1 million in the third quarter of 2016. Segment earnings in the first nine months of 2017 of $98.8 million were approximately nine percent higher than segment earnings of $90.9 million in the first nine months of 2016.

59.     On January 30, 2018, A. O. Smith announced "record sales of $3 billion in 2017." The press release stated that "[s]ales in China grew 16 percent during 2017 and grew 18 percent when the impact from the stronger U.S. dollar is excluded," which helped the Company achieve adjusted net earnings of $378.3 million. The press release continued in pertinent part:

"2017 marked another record year for A. O. Smith," Ajita G. Rajendra, chairman and chief executive officer, announced. ***"Our double-digit sales growth, in 2017 was driven by continued strong demand for our consumer products in China and positive end markets for our water heaters and boilers in North, America. China sales exceeded the $1 billion milestone and were driven by 35 percent growth, in water treatment sales and a near doubling of air purification sales. China on-line sales reached $250 million in 2017."***

\*       \*       \*

**Rest of World segment**

Sales of this segment increased 16 percent in 2017 to $1.12 billion compared with 2016 sales of $965.6 million. ***China sales increased 16 percent and grew 18 percent when the impact from the stronger U.S. dollar is excluded.*** An increase in demand for the company's consumer products in the region, led by water treatment and air purification products, and pricing actions primarily due to higher steel costs and higher fees paid to installers contributed to the strong sales growth in China. Water heater and water treatment sales in India increased approximately $8 million or over 40 percent in 2017 compared with 2016.

***Earnings for this segment increased 16 percent in 2017 to $149.3 million compared with $129.1 million earned the prior year.*** Higher sales in China, including the price increase, were partially offset by higher steel costs, higher fees paid to installers and increased SG&A costs. Expansion of water treatment and air purification product retail outlets in tier 2 and 3 cities, higher

advertising related to brand building in the company's newer product categories and higher water treatment product development engineering costs were the primary drivers of higher SG&A in China. Segment margin of 13.4 percent in 2017 was essentially the same as the prior year.

Segment sales for the fourth quarter 2017 of $313.8 million were I 7 percent higher than the same period in the previous year. **Sales in China increased 16 percent in the quarter,** driven by pricing actions primarily due to higher steel costs, higher fees paid to installers and higher demand for the company's consumer products in the region. Sales in India grew over 40 percent compared with the same period in 2016.

**Segment earnings of $50.8 million were 33 percent higher in the fourth quarter of 2017 compared with the same three-month period in 2016, driven by the impact from higher India sales and China sales, including the price increase. Higher steel costs and higher fees paid to installers partially offset the impact of higher China sales.** Segment margin for the period was 16.2 percent compared with 14.2 percent in 2016, primarily due to improved margin for the company's water treatment products sold in China, lower China selling and advertising costs as a percent of sales and improved performance in India.

60.    On February 16, 2018, A. O. Smith filed a Form 10-K, signed by defendant Rajendra and defendant Kita, which reiterated the Company's 4Ql7 and FYI7 earnings and operating results, including for its China segment. Attached to the report were SOX certifications signed by defendants Rajendra and Kita, attesting to the accuracy of the report. The Form 10-K touted A. O. Smith's experience and market dominance in China, claiming the Company had grown to become "one of the leading suppliers of water heaters to the residential market in China." It continued in pertinent part:

**REST OF WORLD**

Sales in our Rest of World segment increased 15.6 percent, or $150.7 million, in 2017 compared with the prior year. **A 15.9 percent increase in sales in China to over $1 billion was the primary source of the increase. Excluding the appreciation of the U.S. dollar, sales in China increased 17.9 percent in 2017.**

**We have operated in China/or more than 20 years. In that time, we have been aggressively expanding our presence while building A. 0. Smith brand**

- 28 -

*recognition in the residential and commercial markets.* The Chinese water heater market is predominantly comprised of electric wall-hung, gas tankless, combi- boiler and solar water heaters. *We believe we are one of the leading suppliers of water heaters to the residential market in China in dollar terms, with a broad product offering including electric, gas tankless, heat pump and combi boilers as well as solar units.* We also manufacture and market water treatment products and air purification products, primarily in China.

We sell water heaters in more than 8,000 retail outlets in China, of which over 2,900 exclusively sell our products. Our water treatment products and air purification products are sold in over 7,400 and 3,500 retail outlets in China, respectively. Our e-commerce sales continued to grow in China, to approximately $250 million in 2017.

61. The Form 10-K also stated that the primary driver of A. O. Smith's favorable 2017 financial and operating results was the Company's success in China. Attached to the report were SOX certifications signed by defendants Rajendra and Kita, attesting to the accuracy of the report It stated in pertinent part:

### RESULTS OF OPERATIONS

Our sales in 2017 were a company record $2,997 million surpassing 2016 sales of $2,686 million by 11.6 percent. *The increase in sales in 2017 was primarily due to higher sales in China* as well as higher sales of water heaters and boilers in North America. Sales in China grew 15.9 percent to over $1 billion in 2017, and excluding the impact of the appreciation of the U.S. dollar, sales in China increased 17.9 percent in 2017.

62. On April 25, 2018, A. O. Smith issued a press release announcing "double digit earnings growth on record first quarter sales" of $788 million which contributed to net quarterly earnings of $98.8 million:

### Rest of World segment

First quarter sales for the Rest of World segment increased 13 percent over the 2017 first quarter to $293.8 million. *In China, sales increased 13 percent* including approximately $21 million of benefit from currency translation due to the appreciation of the China currency compared with the prior year. *In local currency terms, sales grew four percent* and were negatively impacted by a pre-buy in the fourth quarter of 2017. Pricing actions in mid-2017, primarily due to higher steel and installation costs, as

well as higher demand for gas tankless water heaters and water treatment products, contributed to higher sales and were partially offset by a significant decline in air purification product sales primarily due to improved air quality in China.

> *First quarter segment earnings of $36.1 million were approximately 11 percent higher than the $32.5 million earned in last year's first quarter.* Higher China sales, including the price increase, were partially offset by higher steel costs, selling and engineering expenses associated with new product development and the negative impact to earnings from lower air purification product sales.

63.     On May 7, 2018, A. O. Smith filed a Form 10-Q, signed by defendant Rajendra and defendant Kita, which reiterated the Company's 1Ql8 earnings and operating results, including for its China segment. Attached to the report were SOX certifications signed by defendants Rajendra and Kita, attesting to the accuracy of the report. The Form 10-Q stated that "[s]ales in the first quarter of 2018 were $788 million, approximately 6.5 percent higher than sales of $740 million in the first quarter of 2017" "primarily due to continued demand for our consumer products in China and positive end markets for our boilers in North America." The Form 10-Q also said the Company's China sales were expected to continue to grow, stating:

> In our Rest of World segment, *we expect sales in China to grow in 2018 at a rate of approximately nine to ten percent in local currency, or over 14 percent in U.S. dollar terms,* as we believe tankless water heater market growth, geographic expansion and growth in sales of our water treatment products will contribute to our growth.

64.     On July 25, 2018, A. O. Smith issued a press release announcing "double-digit sales and earnings growth in second quarter" of $833.3 million and $92.4 million, respectively:

**Rest of World segment**

> *Second quarter sales for the Rest of World segment increased 13 percent to $308.l million compared with, sales of $272.8 million in the 2017 second quarter. Sales in China increased 12 percent in the second quarter, including a currency translation benefit of approximately $19 million. China sales grew four percent in local currency.* Higher sales of gas tankless

water heaters and water treatment products, as well as pricing actions effective in mid-2017, were partia1ly offset by lower sales of air purification products and e-commerce sales compared with the prior year.

65.    On August 6, 2018, A. O. Smith filed a Form 10-Q, executed by defendant Rajendra and defendant Kita, which reiterated the Company's 2Q18 earnings and operating results, including for its China segment. Attached to the report were SOX certifications signed by defendants Rajendra and Kita, attesting to the accuracy of the report.

66.    In October 30, 2018, A. O. Smith issued a press release stating, "third quarter net earnings of $ 104.6 million or $0.61 per share on third quarter sales of $754.1 million." While the press release discussed "weaker housing growth in China," it quoted defendant Wheeler, who had recently replaced defendant Rajendra as CEO, as stating: "A bright spot in China was our sales of water treatment products, which grew significantly in the quarter … This growth reaffirms our belief of the growing consumer desire for safe drinking water in that country, as well as our capabilities to bring the best products to the market.":

**Rest of World segment**

Sales of this segment, which is primarily comprised of China, Europe and India, ***increased approximately one percent in the third quarter of 2018 to $274.1 million compared with, the year-ago quarter. Higher sales of water treatment and air purification products in China were partially offset by a decline in electric water heater sales compared with the prior year.*** Currency translation reduced sales by approximately $6 million compared with the third quarter 2017.

***Segment earnings were approximately 16 percent higher at $39.1 million*** compared with the third quarter of 2017, primarily due to lower expenses associated with employee incentive programs in China and smaller losses in India. As a result, third quarter 2018 segment margin of 14.3 percent was significantly higher than the 12.5 percent segment margin achieved in the same period in 2017.

67.    On November 8, 2018, A. O. Smith filed a Form 10-Q, signed by defendant Wheeler and defendant Kita, which reiterated the Company's 3Q18 earnings and operating results,

including for its China segment. Attached to the report were SOX certifications signed by Defendants Rajendra and Kita, attesting to the accuracy of the report. The Form 10-Q said:

> In our Rest of World segment, **we expect sales in China to grow in 2018 at a rate of three percent in local currency terms, and five percent in U.S. dollar terms,** lower than our previous guidance due to slower than expected housing growth caused by deteriorating consumer confidence related to a weakening economy...

> Combining all of these factors, **we expect our consolidated sales to grow approximately seven percent in 2018.**

> **We preliminarily project our 2019 sales growth in China in local currency will be three percent compared to 2018, as inventory levels remain elevated into 2019 due to slower housing growth.** Further, we expect headwinds of approximately $50 million to sales and over $7 million to earnings in China due to the depreciation of the China currency compared to the U.S. dollar in 2019 compared to 2018. Combining our China projection, with the benefit of a full year of pricing actions for North America water heaters, a full year of sales of water treatment products to Lowe's and our projection that the remainder of our products will have sales growth similar to 2018, **we project our organic growth in 2019 will be 5.5 to seven percent in local currency terms and four to 5.5 percent in U.S. dollar terms.**

68.     On January 29, 2019, A. O. Smith issued a press release announcing "record sales and net earnings in 2018" of $3.2 billion and $44.2 million, respectively. The press release stated that the growth was driven, in part, by "water treatment products in China" as "[t]otal China sales grew approximately four percent." The release expressed defendant Wheeler's comments, as highlighting the Company's exponential growth in global water treatment sales, which had been driven primarily by sales in China: "In seven years we have been able to grow our global water treatment sales from approximately $35 million to $400 million:

**Rest of World segment**

> **Sales of this segment increased five percent in 2018 to $1.2 billion compared with 2017 sales. China sales increased nearly two percent on a**

***local currency basis.*** The Chinese currency favorably impacted the translation of China sales by approximately $23 million. In China, higher water treatment product sales were partially offset by lower sales of electric water heaters and air purification products. Water heater and water treatment product sales in India increased approximately $8 million, or over 30 percent, in 2018 compared with 2017.

69.     On February 15, 2019, A. O. Smith filed a Form 10-K, signed by defendant Wheeler and defendant Kita, which reiterated the Company's 4Ql8 and FY18 earnings and operating results, including for its China segment. Attached to the report were SOX certifications signed by Defendants Rajendra and Kita, attesting to the accuracy of the report. The Form 10-K highlighted A. O. Smith's experience and market dominance in China, claiming the Company had grown to become "one of the leading suppliers of water heaters to the residential market in China." It continued in pertinent part:

### REST OF WORLD

***We have operated in China a for more than 20 years. In that time, we have been aggressively expanding our presence while building A. O. Smith brand recognition in the residential and commercial markets.*** The Chinese water heater market is predominantly comprised of electric wall-hung, gas tankless, combi boiler, heat pump and solar water heaters. *We believe we **are** one of the leading **suppliers of water heaters to the residential market in China in dollar terms.*** We manufacture and market water treatment products, primarily residential reverse osmosis products. We also manufacture and market air purification products in China.

We sell water heaters in more than 9,000 retail outlets in China, of which over 2,800 exclusively sell our products. Our water treatment products and air purification products are sold in over 7,500 and 3,500 retail outlets in China, respectively.

70.     The Form 10-K also stated that the main driver of A. O. Smith's favorable 2018 financial and operating results was the Company's success in China:

### RESULTS OF OPERATIONS

Our sales in 2018 were a Company record $3,188 million surpassing 2017 sales of $2,997 million by 6.4 percent. ***The increase in sales in 2018 was primarily due to*** pricing actions related to higher steel costs and higher sales

of boilers and residential water heaters in the U.S. as well as ***higher sales of water treatment products in China. Our global water treatment sales grew to approximately $400 million in 2018. Sales in China grew four percent in 2018.*** Excluding the impact of the appreciation of the U.S. dollar against the Chinese currency, our sales in China increased almost two percent in 2018. Our sales in 2017 were higher than 2016 sales of $2,686 million by 11.6 percent, primarily due to higher sales in China as well as higher sales of water heaters and boilers in North America. Our sales in China grew 15.9 percent in 2017 to over $1 billion and excluding the impact of the appreciation of the U.S. dollar against the Chinese currency, sales in China grew 17.9 percent in 2017 compared to 2016.

71.     The statements referenced in above were materially false and/or misleading when made because they failed to disclose adverse facts pertaining to the Company's business, operations and financial condition, which were known to or recklessly disregarded by defendants as follows: (a) that A. O. Smith had undisclosed business connections and entanglements with UTP through which it funneled up to 75% of its China product sales; (b) that A. O. Smith had used UTP to engage in channel stuffing by artificially inflating inventories purportedly sold through distributors that were not based on consumer demand, thereby approximately doubling the normal level of inventory at such distributors; (c) that A. O. Smith had used its UTP relationship to artificially inflate the sales figures it reported to investors by as much as 8% and to conceal worsening sales trends that the Company was experiencing in China; (d) that A. O. Smith's sales growth had been primarily in lower margin products as its higher priced products were being undercut by competition in "second-tier" Chinese cities, causing the Company to experience significant margin pressures; (e) that A. O. Smith had increased its cash reserves in China to over $530 million in furtherance of its channel stuffing and sales manipulation scheme, encumbering the Company's ability to repatriate the cash or use it for capital expenditures; and (f) that, as a result A. O. Smith's business, operations, and prospects were significantly worse than publicly represented and the Company was poised for sales and

earnings declines in China, its most important international market.

72.     In addition, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(a)(3)(ii) ("Item 303") required the 2016 Form 10-K, 2017 Form 10-K and 2018 Form 10-K to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failure to disclose their use of an undisclosed distribution partner to engage in channel stuffing and to artificially inflate A. O. Smith's China sales and earnings results was a violation of Item 303 because it was a known trend and uncertainty that was likely to, and did, have a material unfavorable impact on the Company's revenues and income from continuing operations.

73.     On February 28, 2019, the Director Defendants Rajendra, Wheeler, Brown, Greubel, Jones, Kadri, B. Smith, D. Smith, Wolf and Wulf caused the Company to file its 2019 Proxy Statement with the SEC pursuant to Section 14(a) of the Exchange Act seeking their respective elections as directors for one-year terms. The 2019 Proxy Statement, however, contained material misstatements and omissions.[4]

74.     On February 28, 2018, the Director Defendants Rajendra, Wheeler, Brown, Current, Greubel, Jones, Kadri, B. Smith, D. Smith, Wolf and Wulf caused the Company to file its 2018 Proxy Statement with the SEC pursuant to Section 14(a) of the Exchange Act seeking their respective elections as directors for one-year terms. The 2018 Proxy Statement, however, contained material misstatements and omissions.

---

[4] Plaintiff's allegations with respect to the misleading statements in the 2018 Proxy Statement are based solely on negligence; they are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants, and they do not allege, and do not sound in, fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness about these allegations and related claims.

75. On March 3, 2017, the Director Defendants Rajendra, Wheeler, Brown, Current, Greubel, Jones, Kadri, B. Smith, D. Smith, Wolf and Wulf caused the Company to file its 2017 Proxy Statement with the SEC pursuant to Section 14(a) of the Exchange Act seeking their respective elections as directors for one-year terms. The 2017 Proxy Statement, however, contained material misstatements and omissions.

76. The 2017, 2018 and 2019 Proxy Statements contained the following concerning the Company's Code of Business Conduct and Ethics:

> We are committed to making our corporate governance information accessible to stockholders and other interested parties. Accordingly, on our website, www.aosmith.com, under the "Investors" heading, and then "Governance" subheading, we have published the A. O. Smith Corporation Guiding Principles and the Financial Code of Ethics and provided a link for Stockholder Contacts to Communicate with Directors.

> \*   \*   \*

> As part of its responsibilities, the (Nominating and Governance) Committee monitored our corporate governance. It recommended to the Board of Directors updates to the Corporate Governance Guidelines, which the Board adopted. The Committee verified that all Committees' Charters were in place and were reviewed by the Committees. It reviewed our code of business conduct, called the "Guiding Principles," as well as our financial code of ethics, officers' outside board memberships, minimum qualifications for directors, the process and procedure for stockholder recommendation of director candidates and stockholder communications with the Board, which the Board previously adopted.

77. The 2017, 2018 and 2019 Proxy Statements were false and misleading because, despite assertions to the contrary, its code of business conduct and Corporate Governance Guideline was not followed, as the Individual Defendants allowed false and misleading statements to be issued to the investing public, and failed to comply with laws and regulations, or conduct business in an honest and ethical manner.

78. Then, on April 30, 2019, A. O. Smith reported less than impressive financial results for its first fiscal quarter of 2019. Quarterly sales declined 5% to $748.2 million, while net quarterly earnings declined approximately 7% to $89.3 million. The primary reasons for these

results were adverse business trends in China and plummeting Chinese sales, which had been masked by defendants' prior misinformation. Quarterly sales in A. O. Smith's Rest of World segment fell 21% to $232.1 million, including an 18% decline in Chinese sales on a local currency basis. Even more shocking, quarterly earnings for the segment fell more than 65% year-over-year to only $12.3 million. Attached to the report were SOX certifications signed by defendants Rajendra and Kita, attesting to the accuracy of the report.

79. On this news, the price of A. O. Smith common stock fell 6% to $52.57 per share on abnormally high volume of over 4.8 million shares.

80. However, because investors did not know the full truth about A. O. Smith's use of an undisclosed distribution partner to inflate its earnings and sales results in China, the price of A. O. Smith stock remained artificially inflated. Instead, defendants continued to conceal the scheme, for example by playing off, during an April 30, 2019 earnings call, the weakness in China as temporary and related to macro events with improvement expected in the second half of the year.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF DUTY ARE REVEALED

81. On May 16, 2019, J Capital Research USA LLC wrote a report on A. O. Smith's China operations and undisclosed relationship with UTP (the "*J Capital Report*"). The *J Capital Report* said A. O. Smith was inflating its sales and earnings figures and hiding adverse business trends in China by not informing investors of its distributor relationship with UTP. The *J Capital Report* noted A. O. Smith's purported $539 million in cash in China was involved in the scheme:

> **Pleading the fifth on China operations:** Despite never appearing in the financial filings or being mentioned on conference calls, Jiangsu UTP Supply Chain is involved in almost every aspect of A. O. Smith's China business. The relationship is public knowledge in China. UTP's involvement spans the acquisition of raw materials, the hiring of labor, potentially co-owning factories, marketing, and most notably "accepting" inventory and financing AOS distributors. We estimate that UTP may be responsible for as much as 75% of AOS China sales.

**The UTP relationship has obscured China business performance and financial statements:** The UTP partnership has allowed AOS to inflate gross margins and mask the actual China revenue slowdown through distributer-financed channel stuffing. We also believe that the irreconcilable capex, R&D and asset inventory accounts are being used as cookie jars to preserve the "integrity" of the financial statements while hiding UTP's involvement. Our detailed distributor channel checks indicate China revenue will fall by as much as 21% in 2019 vs management's claims of a 6-8% decline.

**Is the cash really there?** We believe that A. O. Smith does not actually have access to $539 mill that reportedly sits in China- about 84% of the company's total cash at year end 2018. We have conducted dozens of interviews in China and believe that AOS may have used its cash for distributor loans to prop up sales. That would mean the money is in escrow and cannot be touched until loans are repaid. What's more, distributor loans are at risk in a weakening market. Chinese distributors of AOS products - financially imperiled companies - are being financed at 18% to take AOS inventory, and many are holding six months of inventory. These companies are at risk of default - and AOS could be on the hook.

**China headwinds are everywhere:** In Q1, AOS reported a 66% drop in Rest of World earnings due to China declines but said the drop is temporary. We disagree. During China's boom years, AOS benefited from selling a premium product at a mid to high price point through direct channels in Tier 1 cities. To offset numerous steel and rental price increases, AOS has continuously increased the price of its heaters, until the appliances reached a price point unobtainable for some of the original purchase base. The higher-priced product has been a particularly poor fit for Tier 2-4 cities, the next leg of AOS's China growth strategy, and the price-sensitive online channel continues to take share from the direct channel. AOS has recently launched new products at their original price points, but these "startups" are just ramping up and will carry much lower margins for the foreseeable future. Distributors believe the new product releases are just a way to discount old stock and force new inventory into the channels. These product/channel challenges are presently being compounded by a weakening Chinese economy and the U.S.-China trade spat's impact on selling an American- branded product in China.

82.     Following the *J Capital Report*, the price of A. O. Smith common stock fell 6% to

$45.12 per share on abnormally high volume of over 13.5 million shares.

83.     Although the *J Capital Report* was issued by a research firm with an admitted

"short" position in A. O. Smith stock, the report was well supported by evidence with, "dozens"

of witness interviews, government records and other information that supported its allegations. An

additional research firm, Spruce Point Capital, also issued a series of tweets supporting the reports allegations and conclusions.

84.     While A. O. Smith published a press release purportedly denying the allegations, the release clearly admitted that the Company had substantial business interests in China with UTP. This response by the Company did not stabilize the price of A. O. Smith. Instead, it continued to decline to $43.26 per share on May 20, 2019. At least one Wall Street research firm also subsequently downgraded the stock.

## DAMAGES TO A. O. SMITH

85.     The improper accounting practices have exposed the Company to myriad reputation and financial damages, including. but not limited to:

(a)  Restatements and goodwill impairments;

(b)  Liability arising from securities fraud litigation;

(c)  The loss of credibility with customers and suppliers; and

(d)  Legal and accounting costs associated with litigation, investigations and restatements.

## DERIVATIVE ALLEGATIONS

86.     Plaintiff brings this action derivatively and for the benefit of A. O. Smith  to redress injuries suffered, and to be suffered, because of the Director Defendants' breaches of their fiduciary duties as directors and/or officers of A. O. Smith, waste of corporate assets, unjust enrichment, and violations of Sections 14(a) and 20(a) of the Exchange Act, as well as the aiding and abetting thereof.

87.     A. O. Smith is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

88.     During the wrongdoing alleged herein, Plaintiff has been and remains a stockholder of A. O. Smith. Plaintiff will adequately and fairly represent the interests of A. O. Smith in

enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

89. Plaintiff incorporates by reference and re-alleges each allegation stated above as if fully set forth herein.

90. A pre-suit demand on the Board of A. O. Smith would have been futile and, therefore, is excused. At the time of filing of this action, the Board consists of Director Defendants Rajendra, Brown, Greubel, Jones, Kadri, B. Smith, M. Smith, Wheeler, Wolf and Wulf. Plaintiff need only allege demand futility as to a majority of Director Directors who were on the Board at the time this action was commenced.

91. Demand is excused here because a majority of the Director Defendants, individually and collectively, face a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material facts, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme. Indeed, Director Defendant Rajendra signed the 10K and 10Q SEC filings from 2016 - 2019. Director Defendants Rajendra, Brown, Greubel, Jones, Kadri, B. Smith, M. Smith, Wheeler, Wolf and Wulf also solicited the false and misleading 2017, 2018 and 2019 Proxy statements.

92. In complete abdication of their fiduciary duties, the Direct Directors either knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. The fraudulent scheme was, inter alia, intended to make the Company appear more profitable and attractive to investors. Because of the foregoing, the Director Directors breached their fiduciary duties, face a substantial likelihood of liability, are

not disinterested, and demand upon them is futile, and thus excused.

**Audit Committee**

93.     Demand is otherwise futile with respect to the five members of the Audit Committee during the relevant period (Current, Kadri, M. Smith, Wolf and Wulf) because they face the risk of substantial liability stemming from their failure to oversee the Company's compliance with applicable accounting regulations despite their mandate to do so under the Audit Committee Charter.

94.     Demand is also futile because, according to the 2019 Proxy, "the Smith Family Voting Trust has the power to elect a majority of our Class A Directors, who make up a majority of the Board.

95.     The 2019 Proxy further explicated that "as of December 31, 2018, the Smith Family Voting Trust directly or beneficially owned 96.5% of Class A Common Stock and therefore 96.5% of voting power with respect to the election of the Class A Directors

96.     Further, "since the Board is currently composed of six Class A Directors and four Common Stock Directors, the Smith Family Voting Trust effectively exercises control over voting power for a majority of the members of our Board of Directors, and therefore, we have qualified as a "controlled company" under the New York Stock Exchange ("NYSE") rules." The Class A Directors are B. Smith, Rajendra, Jones, Brown, M. Smith, and Wheeler. M. Smith is also a member of the Audit Committee.

97.     The Proxy further states that "as a controlled company, under NYSE rules, we may choose to not have a majority of independent directors or compensation or governance committees consisting solely of independent directors."

98.     Nevertheless. The Proxy stated that "notwithstanding our status as a controlled

company, the Board has not elected to utilize the "controlled company" exemption in any respect because, as described below, we have a Board in which a majority of our members consist of independent directors, and all members of the Audit Committee, Personnel and Compensation Committee and Nominating and Governance Committee are independent for SEC and NYSE purposes."

99.     Notwithstanding the Company's statement that it will not avail itself of certain privileges otherwise available to it, demand is still futile on any Class A or non-Class A Director concerning the conduct of either M. or B. Smith because they possess, through the Trust, the power to vote that director out.  Indeed, any demand with respect to M. Smith due his role on the Audit Committee would be futile for the same reason, namely he is one of the Trustees that controls the Company.  The same is true with respect to any demand on B. Smith.

**Additional Considerations**

100.     Directors Rajendra and Wheeler are each a member of the Air-Conditioning and Refrigeration Institute, an industry group promoting products A. O. Smith sells to the public.

101.     Directors Rajendra and Jones are each a member of The Manufacturers Alliance for Productivity and Innovation – a manufacturing interest group.  They are also both members of the Business Roundtable and the Metropolitan Milwaukee Association of Commerce.

102.     Directors B. Smith and M. Smith control the Smith Family Trust, which in turn controls the Company.  They are cousins.

**Non-Compliance with the Code of Conduct**

103.     In violation of the Code of Conduct, the Director Directors conducted little, if any, oversight of the Company's internal controls over public reporting and of the Company's engagement in an accounting scheme to issue materially false and misleading statements to the

public and facilitate and disguise the Director Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, and violations of the Exchange Act. In violation of the Code of Conduct, the Directors failed to comply with the law. Thus, the Director Defendants face a substantial likelihood of liability and demand is futile as to them.

104. A. O. Smith has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Directors have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for A. O. Smith any part of the damages A. O. Smith suffered and will continue to suffer. Thus, any demand upon the Directors would be futile. The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director Directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the stockholders of the Company. Accordingly, demand is excused as futile.

105. The acts complained of herein constitute violations of fiduciary duties owed by A. O. Smith's Director Defendants, and these acts are incapable of ratification.

**Insurance Considerations**

106. The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of A. O. Smith. If there is a directors' and officers'

liability insurance policy covering the Director Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, inter alia, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of A. O. Smith, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

107.    If there is no directors' and officers' liability insurance, then the Director Defendants will not cause A. O. Smith to sue any other wrongdoers, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well. Thus, for all of the reasons set forth above, all of the Director Defendants, and, if not all of them, at least three of the Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## **FIRST CLAIM**

### **Against the Director Defendants**
*for Violations of Section 14(a) of the Exchange Act*

108.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

109.    The Section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants. The Section 14(a) claims alleged herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or

- 44 -

reference to any allegation of fraud, scienter, or recklessness with regard to these nonfraud claims.

110.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

111.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

112.    Under the direction and watch of the Director Defendants, the 2017, 2018 and 2019 Proxy Statements failed to disclose material adverse facts about A. O. Smith 's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (a) that A. O. Smith had undisclosed business connections and entanglements with UTP through which it funneled up to 75% of its China product sales; (b) that A. O. Smith had used UTP to engage in channel stuffing by artificially inflating inventories purportedly sold through distributors that were not based on consumer demand, thereby approximately doubling the normal level of inventory at such distributors; (c) that A. O. Smith had used its UTP relationship to artificially inflate the sales figures it reported to investors by as much as 8% and to conceal worsening sales trends that the Company was

experiencing in China; (d) that A. O. Smith's sales growth had been primarily in lower margin products as its higher priced products were being undercut by competition in "second-tier" Chinese cities, causing the Company to experience significant margin pressures; (e) that A. O. Smith had increased its cash reserves in China to over $530 million in furtherance of its channel stuffing and sales manipulation scheme, encumbering the Company's ability to repatriate the cash or use it for capital expenditures; and (f) that, as a result A. O. Smith's business, operations, and prospects were significantly worse than publicly represented and the Company was poised for sales and earnings declines in China, its most important international market.

113. The 2017, 2018 and 2019 Proxy Statements stated that the Company's directors and employees, including its principal executive officer, principal financial officer, principal accounting officer, and controller, or persons performing similar functions, are subject to the Company's Code of Conduct. The 2017, 2018 and 2019 Proxy Statements were also false and misleading because, despite assertions to the contrary, A. O. Smith's Code of Conduct was not followed, as the Director Defendants made and/or caused the Company to make the false and misleading statements discussed herein.

114. In the exercise of reasonable care, the Director Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2017, 2018 and 2019 Proxy Statements were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for stockholder determination in the 2017, 2018 and 2019 Proxy Statements, including, but not limited to, election of directors, ratification of an independent auditor, and the approval of executive compensation.

115. The false and misleading elements of the 2017, 2018 and 2019 Proxy Statements led to the re-elections of all of the Director Defendants which allowed them to continue breaching their fiduciary duties to A. O. Smith.

116. The Company was damaged as a result of the Director Defendants' material misrepresentations and omissions in the 2017, 2018 and 2019 Proxy Statements.

117. Plaintiff on behalf of A. O. Smith has no adequate remedy at law.

## SECOND CLAIM

### Against the Individual Defendants
*for Violations of Section 20(a) of the Exchange Act*

118. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

119. The Individual Defendants, by virtue of their positions with A. O. Smith and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of A. O. Smith and officers and directors who made the false and misleading statements alleged herein within the meaning of § 20(a) of the Exchange Act. The Individual Defendants had the power and influence, and exercised same, to cause A. O. Smith to engage in the illegal conduct and practices complained of herein.

120. Plaintiff on behalf of A. O. Smith has no adequate remedy at law.

## THIRD CLAIM

### Against Individual Defendants
*for Breach of Fiduciary Duties*

121. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

122. Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of A. O. Smith's business and affairs.

123.     Each of the Individual Defendants violated and breached their fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

124.     The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of A. O. Smith.

125.     In breach of their fiduciary duties, the Individual Defendants caused the Company to engage in the misconduct described herein.

126.     In further breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure, controls, and procedures.

127.     Also in breach of their fiduciary duties, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose: (a) that A. O. Smith had undisclosed business connections and entanglements with UTP through which it funneled up to 75% of its China product sales; (b) that A. O. Smith had used UTP to engage in channel stuffing by artificially inflating inventories purportedly sold through distributors that were not based on consumer demand, thereby approximately doubling the normal level of inventory at such distributors; (c) that A. O. Smith had used its UTP relationship to artificially inflate the sales figures it reported to investors by as much as 8% and to conceal worsening sales trends that the Company was experiencing in China; (d) that A. O. Smith's sales growth had been primarily in lower margin products as its higher priced products were being undercut by competition in "second-tier" Chinese cities, causing the Company to experience significant margin pressures; (e) that A. O. Smith had increased its cash reserves in China to over $530 million in furtherance of its channel stuffing and sales

manipulation scheme, encumbering the Company's ability to repatriate the cash or use it for capital expenditures; and (f) that, as a result  A. O. Smith's business, operations, and prospects were significantly worse than publicly represented and the Company was poised for sales and earnings declines in China, its most important international market.

128.    The Individual Defendants failed to correct and/or caused the Company to fail to rectify any of the wrongs described herein or correct the false and/or misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

129.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Director Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

130.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent schemes and fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the

Company's securities and engaging in insider sales. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

131.     These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

132.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, A. O. Smith has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

133.     Plaintiff on behalf of A. O. Smith has no adequate remedy at law.

## FOURTH CLAIM

**Against Individual Defendants**
*for Unjust Enrichment*

134.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

135.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, A. O. Smith.

136.     The Individual Defendants either benefitted financially from the improper conduct or received unjust compensation tied to the false and misleading statements, or received bonuses, stock options, or similar compensation from A. O. Smith that was tied to the performance or artificially inflated valuation of A. O. Smith, or received compensation that was unjust in light of the Director Defendants' bad faith conduct.

137.     Plaintiff, as a stockholder and a representative of A. O. Smith, seeks restitution from the Director Defendants and seeks an order from this Court disgorging all profits— including

benefits, performance-based, valuation-based, and other compensation—obtained by the Director Defendants due to their wrongful conduct and breach of their fiduciary duties.

138.    Plaintiff on behalf of A. O. Smith has no adequate remedy at law.

## FIFTH CLAIM

### Against Individual Defendants
*for Waste of Corporate Assets*

139.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

140.    As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend unlawful actions, engage in internal investigations, and lose financing from investors and business from future customers who no longer trust the Company and its products.

141.    Because of the waste of corporate assets, the Individual Defendants are each liable to the Company.

142.    Plaintiff on behalf of A. O. Smith has no adequate remedy at law.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Director Defendant as follows:

a.    Declaring that Plaintiff may maintain this action on behalf of A. O. Smith, and that Plaintiff is an adequate representative of the Company;

b.    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to A. O. Smith;

c.    Determining and awarding to A. O. Smith the damages sustained by it because of the violations set forth above from each of the Individual Defendants, jointly and severally,

together with pre- and post-judgment interest thereon;

     d.     Directing A. O. Smith and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and protect A. O. Smith and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

     1.     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

     2.     a provision to permit the shareholders of A. O. Smith to nominate at least six candidates for election to the Board; and

     3.     a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

     e.     Awarding A. O. Smith restitution from Individual Defendants, and each of them;

     f.     Awarding Plaintiff, the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

     g.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: August 19, 2019


                         **ADEMI & O'REILLY, LLP**

                         s/ John D. Blythin

Guri Ademi (SBN 1021729)
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
3620 E. Layton Ave.
Cudahy, WI 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
gademi@ademilaw.com
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com


**LEVI & KORSINSKY, LLP**

_____

Gregory Mark Nespole (GN 6820)
Samir Shukurov (SS 9491)
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
gnespole@zlk.com
shukurov@zlk.com

*Attorneys for Plaintiff*

## VERIFICATION

I, Ian W. Pierce, under penalties of perjury, hereby do declare that I am a plaintiff in the foregoing complaint, that I have read the complaint, and that the facts therein are true to my own knowledge, except to matters stated therein to be alleged upon information and belief, and as to those matters, I believe them to be true and correct to the best of my knowledge, information, and belief.

Signed:

Print Name: Ian Pierce                    Date: 08/16/2019